IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AGAFIA ROBERTS,

             Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

             Defendant.

_____

Civ. No. 3:13-cv-00442-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff Afagia Roberts brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issue before this Court is whether the ALJ erred in evaluating the respective opinions of examining psychologist, Dr. Lange, non-examining psychologist, Dr. Anderson, treating physician, Dr. Callahan, and social worker, Nickie Frisch. Because the ALJ articulated sufficient reasons supported by substantial evidence in the record for his evaluation of the respective opinions, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on May 8, 2009, alleging disability since March 1, 2007 (later amended to September 28, 2008). Tr. 15, 42, 154–66. These claims were denied initially

and upon reconsideration. Tr. 15, 84–93. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the Honorable Riley Atkins on August 22, 2011. Tr. 15, 38–78. ALJ Atkins denied plaintiff's claims by written decision dated September 23, 2011. Tr. 15–24. Plaintiff sought review from the Appeals Council, which was subsequently denied, tr. 1–4, thus rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on February 15, 1958, tr. 43, 154, 159, completed limited formal education, tr. 44 (indicating that plaintiff completed sixth grade), and worked most recently as a sorter/packager for Gage Industries Inc. (1989–2009), tr. 45–48, 167–76, 192. Plaintiff was fifty at the time of alleged disability onset, and fifty-three at the time of hearing. *See* tr. 43, 154, 159.[1] Plaintiff alleges disability due to lumbar degenerative disk disease; cognitive disorder (not otherwise specified); and dysthymic disorder.[2] *See* tr. 17, 200.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

---

[1] Plaintiff was a "[p]erson closely approaching advanced age" at the time of alleged disability onset and at the time of hearing. *See* 20 C.F.R. § 404.1563(d).

[2] Plaintiff contends that additional limitations not listed as severe impairments by the ALJ were improperly evaluated by the ALJ. *See* Pl.'s Br. 6–15, ECF No. 16.

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

Plaintiff contends that the ALJ erred in formulating and applying plaintiff's RFC under step four of the sequential evaluation. In particular, plaintiff argues: (1) the ALJ erred in evaluating the opinion of examining psychologist Donald Lange, Ph.D.; (2) the ALJ erred in evaluating the opinion of non-examining psychologist Dorothy Anderson, Ph.D.; (3) the ALJ erred in evaluating the opinion of L. Teresa Callahan, M.D.; and (4) the ALJ erred in evaluating the opinion of Nickie Frisch, L.C.S.W.

## I. Donald Lange, Ph.D.

Plaintiff contends that the ALJ erred in his consideration of Dr. Lange's opinion. Pl.'s Br. 6–9, ECF No. 16. In response, defendant argues that the ALJ provided sufficient reasons for the weight assigned to Dr. Lange's opinion. Def.'s Br. 5, ECF No. 17.

In January 2009, Donald Lange, Ph.D., met with plaintiff and administered a comprehensive neuropsychological evaluation (CNE).[3] Tr. 350–59, 490–91. Based on the CNE

---

[3] This evaluation included the following tests:

Alphabet Forwards and Backwards, Babcock Story Recall, Balance, Beck Depression Inventory, California Verbal Learning, Cerebellar, Complex Motor Sequencing, Double Alternating Movement, Double Simultaneous Stimulation, Hooper Visual Organization, Imitations and Gestures, Line Bisection, Mental Status Examination, Praxia, Rey-Osterrieth

3 – OPINION AND ORDER

results, Dr. Lange diagnosed plaintiff with Cognitive Disorder Not Otherwise Specified (NOS),

Dysthymic Disorder, and mild mental retardation. Tr. 357. Dr. Lange also indicated that "it will

be very important that her work be routine, simple, and linear with a model for comparison," *id.*,

and that "supportive and congruent supervision and training will be important," tr. 358.

Dr. Lange, having met with plaintiff a single time, is not a treating physician. *See, e.g.*,

*Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (indicating that an

ongoing treatment relationship with a claimant is a key factor in determining whether a physician

is treating). "To reject his opinion, the ALJ had to give clear and convincing reasons."

*Reginnitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (citation

omitted). "Even if contradicted by another doctor, the opinion of an examining doctor can be

rejected only for specific and legitimate reasons that are supported by substantial evidence in the

record." *Id.* (citation omitted).

The ALJ, pursuant to step two, recognized plaintiff's Cognitive Disorder NOS and

Dysthymic Disorder as severe impairments. Tr. 17. The ALJ, however, declined to recognize Dr.

Lange's diagnosis of mild mental retardation as a severe impairment. The ALJ found:

> Dr. Lange diagnosed mild mental retardation (based on a full-scale IQ score
> of 59). However, there is no history of adaptive limitations or any indication
> that the claimant suffered from this condition before turning eighteen. DDS
> evaluator Dorothy Anderson, Ph.D., noted the claimant worked at the
> substantial gainful activity for several years, concluding she is more
> functional than the IQ score would suggest. The claimant's work activity
> ended with the closure of her employer['s] factory, not due to any medically
> determinable impairment. I also note that the claimant's difficulties with the
> English language (Russian being her first language) may have contributed to
> the IQ test score.

Tr. 18 (citations omitted).

---

Complex Figure, Tandem Walk, Tapping, Trail Making A and B, Wechsler Adult
Intelligence Scale-III, WRAT-3 Reading & Arithmetic, and Vigilance.
Tr. 350.

4 – OPINION AND ORDER

The ALJ, pursuant to step four, found that plaintiff had the RFC to "perform light work . . . except: she may stand and walk two to four hours of an eight-hour workday; no climbing of ladders, ropes and scaffolds; climb ramps and stairs occasionally; and she can perform only simple, routine, repetitive work; and only occasional public contact." Tr. 19. The ALJ, in reference to Dr. Lange's opinion, further noted:

> Also in January 2009, the Department of Vocational Rehabilitation referred the claimant for a psychological evaluation with Dr. Lange. The claimant reported that she cried frequently, and felt depressed. On skills testing, the claimant had fifth grade math skills and a fourth grade reading level. The full-scale IQ score of 59 suggested mild mental retardation. Dr. Lange noted slow processing, inconsistent attention, and inadequate concentration. He explained that the claimant's concentration and persistence would be adequate if the claimant received repeated instructions. He added that the claimant would be socially appropriate, though she would not always be aware of others trying to exploit her. According to Dr. Lange, the claimant needs a structured job situation and coaching from supervisors. Based on the claimant's physical complaints, Dr. Lange suggested that the claimant perform only light exertional activity. This statement receives little weight because Dr. Lange is a psychologist, not a physician. Overall, Dr. Lange's opinion receives only some weight, as the evidence as a whole does not support a finding of extremely limited intellectual functioning.

Tr. 21. Plaintiff contends that this RFC formulation does not incorporate many of the proposed functional limitations identified by Dr. Lange. Plaintiff directs this Court's attention to suggested limitations in intellectual functioning (including related adaptive limitations) and concentration, persistence and pace. *See* Pl.'s Br. 6–10, ECF No. 16.

As to intellectual functioning and related adaptive limitations, the ALJ relied heavily on the opinion of Dorothy Anderson, Ph.D., and plaintiff's past employment history. *See* Tr. 18. Dr. Anderson, a non-examining psychologist, noted:

> New info about earnings—over 20,000 for many years—until back problems in 9/08, suggest that claimant is more functional than IQs would indicate. IQ testing on this lady w/poor educational background and cultural limitations is of questionable validity as an indicator of [Mental Retardation

> (MR)]. As Dr. Lange notes, he doesn't have hx prior to age 18 of limitations
> suggesting MR, and I would argue that he also doesn't have adaptive
> deficits consistent with MR. Claimant more likely BIF/Cognitive disorder,
> with limitations to simple tasks in predictable settings, as she has done for
> year[s]. Dr. Lange also essentially states that claimant is operating at this
> level in terms of work ability.

Tr. 412. The ALJ's reliance on Dr. Anderson's findings, tr. 22, and plaintiff's approximately

twenty-year employment history as a sorter/packager for Gage Industries Inc., tr. 45–48, 167–76,

192, provides clear and convincing reasons supported by substantial evidence to reject Dr.

Lange's diagnosis of mental retardation to the extent that this diagnosis is inconsistent with

plaintiff's RFC. *See also Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (finding

"substantial evidence indicated that the condition of [plaintiff] had remained constant for a

number of years and that her [condition] had not prevented her from working over that time.").[4]

    As to concentration, persistence and pace, the ALJ imposed a RFC limiting plaintiff to

"simple, routine, repetitive work." Tr. 19. Plaintiff contends that this "does not include any

functional limitations related to concentration, persistence or pace." Pl.'s Br. 8, ECF No. 16. This

Court is not persuaded.

    In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit

joined the Sixth and Eighth Circuits in recognizing that an "ALJ's assessment of a claimant

adequately captures restrictions related to concentration, persistence or pace where the

assessment is consistent with restrictions identified in the medical testimony." The Court held

that an ALJ's limiting instruction of "simple tasks" adequately incorporated an examining

doctor's observations that plaintiff had a "slow pace, both with thinking and her actions" and was

"moderately limited" in her ability to "perform at a consistent pace without an unreasonable

---

[4] As noted by plaintiff, Dr. Lange also indicated that plaintiff needed a structured job setting and job coaching. Pl.'s Br. 9, ECF No. 16. However, the ALJ's reliance on Dr. Anderson's conflicting opinion, *see* tr. 416, and plaintiff's employment history, is sufficient to reject this aspect of Dr. Lange's opinion.

number and length of rest periods." *Id*. at 1173; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that the ALJ's limiting instruction of "simple, routine, repetitive work" adequately accounted for "the finding of borderline intellectual functioning."). As in *Stubbs-Danielson*, the hypothetical limitations posed by the ALJ adequately captured plaintiff's *moderate* deficiencies in concentration, persistence and pace, and were consistent with the medical testimony.[5] Insofar as Dr. Lange's description of plaintiff's difficulties in concentration, persistence, or pace is differently articulated than Dr. Anderson's description, e.g., "she had difficulties with mental efficiency, mental tracking and control," tr. 355, the ALJ translated plaintiff's condition, including the pace and mental limitations, into the only concrete restriction available to him—Dr. Anderson's recommended restriction to "simple, routine, repetitive work." *See Stubbs-Danielson*, 539 F.3d at 1174. This does not constitute a rejection of Dr. Lange's opinion. *See id*.

## II. Dorothy Anderson, Ph.D.

Plaintiff contends that the ALJ erred in his consideration of Dr. Anderson's opinion. Pl.'s Br. 11, ECF No. 16. Plaintiff directs this Court's attention to Dr. Anderson's functional limitation ratings. *Id*.

In July 2009, Dr. Anderson completed a psychiatric review technique form and mental residual functional capacity assessment. Tr. 400–417. Dr. Anderson opined that plaintiff "is able to complete a normal workday/workweek doing simple, routine tasks with normal supervision," tr. 416, but had moderate limitations in restriction of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, tr. 410.

---

[5] *See, e.g.*, tr. 416 (Dr. Anderson noted that plaintiff "is able to complete a normal workday/workweek doing simple, routine tasks with normal supervision."); tr. 424 (Joshua Boyd, Psy.D., reaffirmed Dr. Anderson's findings in January 2010).

The ALJ, pursuant to step three, discussed Dr. Anderson's findings on the psychiatric review technique form. The ALJ found:

> On the psychiatric review technique form, Dr. Anderson assessed moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace. Dr. Anderson's analysis receives some weight, though the evidence justifies fewer limitations on activities of daily living.

Tr. 19 (citing tr. 410). Pursuant to step four, the ALJ accorded "significant weight" to Dr. Anderson's mental RFC findings. The ALJ found:

> Dr. Anderson completed the mental residual functional capacity form. According to Dr. Anderson, the claimant could perform simple, routine tasks in a predictable setting (which she had done until being laid off in 2008). Dr. Anderson also limited the claimant to occasional public contact. Dr. Anderson's opinion receives significant weight because it is consistent with the other evidence.

Tr. 22. Plaintiff contends that the ALJ erred in partially rejecting Dr. Anderson's opinion pursuant to step three because the ALJ failed "to identify 'the evidence.'" Pl.'s Br. 12, ECF No. 16. Plaintiff's argument is not persuasive.

The ALJ explicitly discussed plaintiff's daily living activities pursuant to his step three analysis:

> In activities of daily living, the claimant has *mild* restriction. The claimant reported that she maintains her hygiene, waters the plants, cares for her pets, shops, cleans, and does laundry.

Tr. 18 (citing 209–216) (emphasis added). The ALJ expanded on this finding pursuant to his step four analysis:

> The claimant's activities of daily living show that she is not as limited as alleged. She cleans, does laundry, shops, maintains her hygiene, occasionally works in the yard, and takes care of pets. The claimant also swims for exercise.

Tr. 20 (citing 209–16, 218–25, 446). This evidence is sufficient to reject Dr. Anderson's

conclusion that plaintiff had moderate limitations in daily living. *See* 20 C.F.R. §§

404.1527(e)(2), 416.927(e); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir.

2005) ("If the record would support more than one rational interpretation, we defer to the ALJ's

decision." (citation omitted)). In any event, the ALJ explicitly adopted Dr. Anderson's

"Functional Capacity Assessment"—"simple, routine tasks with normal supervision"—which

clarified plaintiff's "limitation or function." Tr. 416; *see also Jensen v. Astrue*, No. 6:11–cv–

06298–ST, 2012 WL 4470507, at *3 (D. Or. Sept. 25, 2012) ("In any event, any error in

designating specific impairments as severe did not prejudice [plaintiff] because the ALJ resolved

step two in her favor.").

### III. L. Teresa Callahan, M.D.

Plaintiff contends that the ALJ erred in his consideration of Dr. Callahan's findings:

"[t]he ALJ attempts to buttress his argument that Claimant is not as physically limited as alleged

by misquoting Dr. Callahan." Pl.'s Br. 14, ECF No. 16. Plaintiff argues that Dr. Callahan "does

not report any 'poor effort,'" and that the ALJ erred in omitting the "additive effect of

Claimant's pain on her functional limitations." *Id.*

Between June and August 2011, Dr. Callahan met with plaintiff at least five different

times. *See* tr. 503–509, 512–14, 516–22. In June 2011, Dr. Callahan administered a physical

exam. Tr. 506–509. Pursuant to this physical exam, Dr. Callahan found:

> Musculoskeletal: Normal range of motion. She exhibits tenderness. She
> exhibits no edema. Tender over bilateral lower back and lumbar
> paravertebral muscles. Very poor ROM of LS spine—Patient will only make
> a *slight* effort to flex forward, extend her back, do lateral flexion or rotation.
> Patient makes only *slight* effort to walk on her heels and her toes. She says
> those movements cause her pain and she will not do them. It is difficult to
> accurately judge the extent of her disability . . . . Patient makes only *slight*

> effort to respond to muscle strength testing in lower extremities. She
> exhibits a lot of pain behavior.

Tr. 508 (emphasis added). The ALJ interpreted these findings as follows:

> When Dr. Callahan saw the claimant in June 2011, the claimant gave *poor*
> effort on tests of walking and range of motion. Dr. Callahan noted
> significant pain behavior, though the neurological examination was normal.
> Due to the claimant's *poor* effort, Dr. Callahan said she could not determine
> how limited the claimant was.

Tr. 20 (emphasis added). Although plaintiff contests the ALJ's use of the term "poor" in lieu of

"slight," this Court is not prepared to find that the ALJ's interpretation is unreasonable. *Batson*,

359 F.3d at 1196 ("When evidence reasonably supports . . . the ALJ's decision, we may not

substitute our judgment for that of the ALJ." (citation omitted)). As noted by defendant, the

adjective "poor" is synonymous with the adjective "slight." Def.'s Br. 11, ECF No. 17 (citations

omitted). Moreover, both terms convey the same general meaning: plaintiff's efforts were

insufficient to enable Dr. Callahan to determine the full extent of plaintiff's limitations.

Plaintiff also generally argues that the ALJ's RFC formulation omitted the "additive

effect" of plaintiff's pain. Pl.'s Br. 14, ECF No. 16. Plaintiff directs this Court's attention to

prescriptions prescribed by Dr. Callahan.[6] Relating to plaintiff's pain, Callahan prescribed:

> 1. Cyclobenzapine for muscle spasms. Tr. 508; *see also* tr. 512, 516, 519.
>
> 2. Meloxicam for back pain. Tr. 508–509; *see also* tr. 505, 512, 516, 519.
>
> 3. Oxycodone-Acetaminophen for pain. Tr. 521.

Plaintiff did not report any major side effects from these (or other) prescriptions to Dr. Callahan.

*See* tr. 503–509, 512–14, 516–22. Having reviewed the record, this Court finds that the ALJ did

---

[6] Plaintiff also indicates that Dr. Callahan prescribed plaintiff a cane for ambulation. Pl.'s Br. 14, ECF No. 16.
However, Dr. Callahan did not make this prescription. *See* tr. 503. Rather, plaintiff reported that she had been
previously prescribed a cane. *Id.*; *see also* tr. 215 (indicating that plaintiff did not use a cane in June 2009); tr. 224
(indicating that plaintiff did not use a cane in July 2009). This Court has no record that plaintiff was prescribed a
cane.

consider plaintiff's subjective pain testimony. *See, e.g.*, tr. 20–21;[7] *see also* tr. 17 (finding that plaintiff's "lumbar degenerative disk disease" "caused significant limitations in the claimant's ability to perform basic work activities"). To the extent that plaintiff implicitly criticizes the ALJ's assessment of plaintiff's credibility, plaintiff failed to argue that issue with any specificity and this Court declines to discuss the issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) ("We do not address this finding because [plaintiff] failed to argue this issue with any specificity in his briefing." (citation omitted)).

## IV. Nickie Frisch, L.C.S.W.

Plaintiff contends that the ALJ improperly rejected the lay witness testimony of Nickie Frisch, L.C.S.W.[8] *See* Pl.'s Br. 11, ECF No. 16.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

---

[7] The ALJ found, in relevant part:

> Turning to the medical evidence, the claimant first reported back pain after a work-related injury in 2007. By May 2007, Rodney Dodge, M.D., indicated that the claimant was medically stationary and could resume her regular work. The claimant later complained of back spasms. Dr. Dodge prescribed cyclobenzaprine. In January 2009, the claimant told Dr. Dodge that her pain was "nine" on a ten-point scale, though medications helped to some degree. The claimant had numbness in her right leg; physical therapy exercised helped. Dr. Dodge cleared the claimant for "regular duty" work, and he recommended conservative treatment such as ibuprofen, stretching exercises, ice, and heat. Dr. Dodge's assessment . . . receives significant weight.

Tr. 20–21.

[8] A licensed clinical social worker (LCSW) is treated as an "other source" under the regulations, 20 C.F.R. § 404.1513(d). *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (applying the "other sources" standard to the testimony of a social worker).

In August 2011, Ms. Frisch met with plaintiff and administered a behavioral health assessment. *See* tr. 529–35. Pursuant to this assessment, Ms. Frisch diagnosed plaintiff with "296.32 Major Depressive Disorder, Recurrent, Moderate" and a current Global Assessment of Functioning (GAF) score[9] of 55, but ruled out "309.81 Posttraumatic Stress Disorder." Tr. 535. The ALJ, having reviewed Ms. Frisch's evaluation, found:

> In 2011, Nickie Frisch, L.C.S.W., gave a [GAF] score of 55, which indicates moderate symptoms or moderate impairment caused by mental impairments. Ms. Frisch's analysis receives only some weight, as the medical evidence and the claimant's daily activities justify fewer limitations.

Tr. 21 (citations omitted). Plaintiff contends that this analysis is inadequate. This Court is not persuaded.

First, as an initial matter, Ms. Frisch is an "other source," who may provide evidence to "show the severity of [plaintiff's] impairment(s) and how it affects [plaintiff's] ability to work." 20 C.F.R. § 404.1513(d); *see also Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009) ("The ALJ was required to consider and comment upon competent lay testimony, as it concerned how [plaintiff's] impairments impact his *ability to work*." (emphasis added)). However, "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Vincent v. Heckler*, 739 F.3d 1393, 1395 (9th Cir. 1984) (upholding Commissioner's decision where the ALJ did not discuss lay testimony that plaintiff's "second stroke had left [plaintiff] impaired."). Thus, to the

---

[9] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citing *Diagnostic and Statistical Manual of Mental Disorders* 20 (rev. 3d ed. 1987)). A GAF score includes two components: symptom severity and functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 32 (rev. 4th ed. 2000) (internal quotation marks omitted). A GAF score between 51 and 60 describes "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

extent that the ALJ arguably did not discuss Ms. Frisch's medical diagnoses, "this omission does not require reversal." *Vincent*, 739 F.2d at 1395.

Second, as to plaintiff's GAF score, this score "does not have a direct correlation to the severity requirements in [the] mental disorders listing." Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764–65 (Aug. 21, 2000); *see also Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). The ALJ explicitly addressed Ms. Frisch's GAF *analysis*[10] and indicated that it received "only some weight" because the medical evidence and the claimant's daily activities justified fewer limitations. These findings, when buttressed by the ALJ's analysis of the medical evidence, *see, e.g.*, tr. 18, and plaintiff's daily activities, *see* tr. 18, 20, constitute reasons germane to disregard the testimony of Ms. Frisch. *See Lewis*, 236 F.3d at 512 ("In all, the ALJ at least noted arguably germane reasons for dismissing [Ms. Frisch's] testimony, even if he did not clearly link his determination to those reasons."); *see also Bonk v. Astrue*, No. 3:11–CV–00637–BR, 2012 WL 5830392, at *11 (D. Or. Nov. 16, 2012) (noting that "an ALJ's failure to address specific GAF scores does not constitute legal error[.]" (citation omitted)).

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

---

[10] Ms. Frisch did not identify any specific functional limitations.

DATED this 19th day of August, 2014.


_____s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**